# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **MARGARET ANN JOHNSSON**, | ) | Case No. 11 B 38307 |
| | ) | |
| Debtor. | ) | Honorable Timothy A. Barnes |
| | ) | |
| | ) | |
| **CATHERINE L. STEEGE**, not individually | ) | |
| but as the Chapter 7 Trustee of the Estate | ) | |
| of Margaret Ann Johnsson, | ) | |
| | ) | Adversary No. 14 A |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MARGARET ANN JOHNSSON**, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Catherine L. Steege, not individually but solely as the chapter 7 trustee for the bankruptcy estate of Margaret Ann Johnsson (the "Trustee"), complains against Margaret Ann Johnsson (the "Debtor"), and states:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1334(b) because this adversary proceeding arises under the Bankruptcy Code and arises in and relates to the Debtor's pending chapter 7 case, Case No. 11 B 38307, pending in this Court.

2. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4. Margaret Ann Johnsson is the debtor in the above-captioned chapter 7 bankruptcy case pending before the United States Bankruptcy Court for the Northern District of Illinois.

5. Catherine L. Steege was appointed as the chapter 7 trustee of the Debtor and thereafter became the permanent trustee.

## FACTUAL ALLEGATIONS

**I.   The Bankruptcy Filing, Section 341 Meeting, and Discharge.**

6. On September 21, 2011, the Debtor, through her then-counsel Deborah K. Ebner, filed her chapter 7 bankruptcy petition.

7. On October 9, 2012, the Debtor filed her bankruptcy schedules and statement of financial affairs.

8. The Debtor's bankruptcy Schedule A listed two parcels or real property in which the Debtor held an interest: a property at 1162 Scott Street, Winnetka, Illinois (the "Winnetka Property") and another property at 12650 South Port Des Morts, Ellison Bay, Wisconsin (the "Wisconsin Property"). The Debtor listed no additional parcels of real property in which she held an interest.

9. In response to the statement of financial affair's request to "List all property owned by another person that the debtor holds or controls", the Debtor checked the box for "None".

10. The Debtor later amended her petition and certain of her schedules, but these amendments were unrelated to the Debtor's statements regarding real property in which she held an interest or her statements regarding property of another person held by the Debtor.

11. The Trustee convened a section 341 meeting and examined the Debtor under oath. The Debtor's then-counsel, Ebner, attended the meeting as well. At the meeting, the Debtor testified that her bankruptcy papers were true and correct:

> TRUSTEE: Is that your signature there?
>
> DEBTOR: it is.
>
> TRUSTEE: And before you signed that document did you read through you bankruptcy papers?
>
> DEBTOR: I did.
>
> TRUSTEE: And were all the answers to all the questions in your bankruptcy papers completed at the time that you signed and read your papers?
>
> DEBTOR: Yes.
>
> TRUSTEE: Is everything in those papers true and correct?
>
> DEBTOR: Yes.
>
> TRUSTEE: Is there anything you need to change?
>
> DEBTOR: No.

12. At that same meeting, the Debtor also testified that she owned no other real estate other than the Winnetka Property and the Wisconsin Property:

> TRUSTEE: What I'm trying to figure out is you got a vacation house you say is worth $370,000 but you are showing secured debt of $715,000.
>
> DEBTOR: There are two loans, two mortgages, both with Private Bank. The first one is for $357,000 and at that time the house was appraised by their appraiser at $500,000.
>
> TRUSTEE: The house up in Door County?
>
> DEBTOR: Right. So when they worked that loan against it that financed the purchase of Scott and the renovation of Scott. The house that my husband lives in. Okay. And then the second mortgage on that house was contingent to close a short sale on our existing marital residence at the time. So before Scott, there was another marital residence and we took a $1.2 million short sale on that and the bank said you have to sign this

3

> $300,000 note against the Door County property. So I did. So it's the same Bank – it's the Private Bank and all of that debt is to them. And that was used to finance the house that my husband lives in and that I own jointly with him.
>
> TRUSTEE: Okay. Other than that do you own any other real estate?
>
> DEBTOR: No.

13. On December 20, 2011, the Debtor received her discharge of debts pursuant to section 727 of the Bankruptcy Code.

## II. The Debtor Fails To Report An Inheritance.

14. In December 2011—well within 180 days of the Debtor's petition date—John Cronin, uncle to the Debtor, passed away, leaving an inheritance to the Debtor and to her brother. The Debtor administered the Cronin estate.

15. The Debtor began liquidating estate assets and making distributions to herself and to her brother.

16. The Debtor did not report her inheritance interest in the Cronin estate to the Trustee.

17. In late 2012, the Trustee received information from a third party that the Debtor had received an inheritance from the Cronin estate. The Trustee sent a letter to the Debtor on November 2, 2012, demanding the Debtor to turnover all inheritance property to the Trustee.

18. On November 7, 2012, the Debtor responded by email to the Trustee's letter. In her response, the Debtor stated that "[s]hortly after my uncle's passing, I talked to my attorney for my initial bankrutpcy [sic] filing, Deborah Ebner, about the whole situation." The Debtor stated that she was initially unsure whether she would receive an inheritance from the Cronin estate, but that "Deborah informed me that if I did inherit anything, since my uncle died two months after my bankruptcy filing, I would have to turn the proceeds over to the bankruptcy

4

court." The Debtor also stated that she had already spent a substantial portion of the Cronin estate proceeds.

19. The Debtor turned over no part of the Cronin estate proceeds at the time of the November 7, 2012 correspondence.

20. The Trustee sent a follow-up demand letter to the Debtor on December 12, 2012, reiterating that the Debtor was required to turn over the Cronin estate proceeds. On December 19, 2012, the Debtor responded, agreeing to turnover a portion of the Cronin estate proceeds derived from a stock sale and a savings account, but stating that she was financially unable to repay the estate for the Cronin estate proceeds that she had already spent. The Trustee received a check for $7,335.88 from the Debtor a short while later.

21. On December 28, 2012, the Trustee sent another letter to the Debtor reiterating that the Debtor was obligated to recompense the bankruptcy estate for the entire value of the Debtor's inheritance from the Cronin estate. The Trustee then met with the Debtor, at the Debtor's request, and reiterated again that the Debtor must repay the estate and urged the Debtor to propose a repayment plan.

22. In late February 2013, the Debtor delivered to the Trustee a check for $3,586.65, which the Debtor represented was the remaining proceeds from an account into which the Debtor had deposited her distributions from the Cronin inheritance estate. Previous correspondence from the Debtor stated that the Debtor had deposited into that account at least $31,472.71 received from the Cronin inheritance estate, which represented proceeds from the sale of Cronin's condominium

23.     On February 28, 2013, the Debtor executed a tolling agreement that tolled the running of any limitations period applicable to any claim of the Trustee against the Debtor until March 1, 2014.

24.     Since the execution of the tolling agreement, the Trustee has repeatedly requested the Debtor to propose a repayment schedule or settlement offer to resolve the Cronin estate inheritance issue.  The Debtor has not done so.

25.     The Debtor's bankruptcy estate is still owed a substantial portion of the Cronin estate inheritance.  The total amount owed to the estate is unknown because the Debtor has failed to comply with the Trustee's repeated requests to provide a full accounting of the Cronin estate's receipts and disbursements, though the Debtor has admitted to receiving significant transfers from the Cronin estate that she has not turned over to the Trustee.  At the very least, the Debtor still owes the estate the remainder of the proceeds she received from the sale of Cronin's condominium.  That amount has not been turned over to the Trustee.

**III.     The Debtor Failed To Report An Interest In A Parcel Of Real Property.**

26.     A parcel of real property located at 3744 North Richmond, Chicago, Illinois (the "Richmond Property") is titled to "Margaret A. Johnsson, not personally but solely as Trustee of the 3744 North Richmond Trust Dated December 20, 2002" (the "Richmond Trust").

27.     The Richmond Trust received the Richmond Property from Donald J. Johnsson, brother of the Debtor, on November 10, 2004.  Donald J. Johnsson occupies the Richmond Property.

28.     The Debtor provided a portion of the funds used to purchase the Richmond Property for Donald Johnsson and received a mortgage interest in the Richmond Property.  On

6

the date that the Richmond Trust received the Richmond Property from Donald J. Johnsson, the Debtor released her mortgage interest in the Richmond Property.

29. The Debtor did not disclose the Richmond Property on her bankruptcy petition Schedule A, which required the Debtor to list all of her interests in real property.

30. At the Debtor's section 341 meeting, the Debtor testified that she held no interests in real property other than the Winnetka Property and the Wisconsin Property.

31. On her statement of financial affairs, the Debtor attested that she was not holding or controlling any property on behalf of another person.

32. The Trustee did not learn of the Debtor's interest in the Richmond Property until after the Debtor received her discharge of debts.

33. After learning of the Richmond Property from a third party, the Trustee requested the Debtor to provide the Trustee with a copy of the trust agreement for the Richmond Trust. In response, the Debtor claimed that no such trust agreement exists and that the Richmond Trust was never established.

## COUNT I

### Revocation of Discharge of Debt - 11 U.S.C. § 727(d)(1)

34. The Trustee realleges and restates Paragraphs 1 through 33 as though fully set forth herein.

35. Pursuant to 11 U.S.C. § 727(d)(1), "the court shall revoke a discharge granted under subsection (a) of this section if … such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge…"

36. The Debtor obtained her discharge by fraud by falsely testifying in the schedules to her bankruptcy petition and at her section 341 meeting that she held no interests in real property besides the Winnetka Property and the Wisconsin Property, thereby failing to disclose the Richmond Property.

37. The Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(1).

## COUNT II

### Revocation of Discharge of Debt - 11 U.S.C. § 727(d)(2)

38. The Trustee realleges and restates Paragraphs 1 through 33 as though fully set forth herein.

39. Pursuant to 11 U.S.C. § 727(d)(2), "the court shall revoke a discharge granted under subsection (a) of this section if … the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee…"

40. The Debtor became entitled to receive proceeds from the Cronin inheritance estate when Cronin died in December 2012. Because the Debtor became entitled to the inheritance within 180 days after the Debtor's petition date, the inheritance interest is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5).

41. Around the time of Cronin's death, the Debtor consulted her bankruptcy attorney, who advised the Debtor that if she received an inheritance, the Debtor "would have to turn the proceeds over to the bankruptcy court."

42. Despite her attorney's advice, the Debtor did not inform the Trustee of the inheritance interest.

8

43. Instead, the Debtor knowingly and fraudulently failed to report her entitlement to the Cronin inheritance proceeds.

44. Once the Debtor received inheritance estate proceeds, she did not report those proceeds to the Trustee. Instead, the Debtor knowingly and fraudulently failed to report her receipt of the Cronin inheritance proceeds

45. Further, the Debtor spent a substantial portion of the Cronin inheritance proceeds.

46. Once the Trustee discovered the Debtor's entitlement to the Cronin inheritance proceeds and demanded the Debtor turn the proceeds over to the bankruptcy estate, the Debtor delayed returning any of the proceeds for more than a month.

47. When the Debtor did transfer Cronin inheritance proceeds to the Trustee, she transferred only a portion of the proceeds. To date, the Debtor has not transferred the remaining portion of the Cronin inheritance proceeds to the Trustee.

48. The Debtor failed to deliver or surrender estate property to the Trustee.

**WHEREFORE** the Trustee prays that this Court enter a judgment order revoking the Debtor's discharge of debt and granting such other relief as this Court deems just.

Dated: February 17, 2014

Respectfully submitted,

CATHERINE L. STEEGE, not individually but as the Chapter 7 Trustee of the Estate of Margaret Ann Johnsson,

By: _/s/ Catherine L. Steege_
One of her attorneys

Catherine Steege (6183529)
Michael Kelly (6289908)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
PH: 312/923-2952
FAX: 312/840-7352